UNITED STATE DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET:

| | |
|---|---|
| ORIANA DISTEFANO, <br> RAFFAELLA F. DISTEFANO, <br> in their individual capacity, <br> and on behalf of all others similarly situated, <br> Plaintiffs <br> Vs. <br> BANK OF AMERICA, CORP. <br> EARLY WARNING SERVICES, <br> LLC DBA ZELLEPAY.COM <br> Defendants | VIOLATION OF THE <br> ELECTRONIC FUNDS TRANSFER <br> ACT (EFTA) 15 U.S.C. §1693 et. seq <br> REGULATION E, 12 C.F.R. § 1005; <br> and <br> VIOLATION OF <br> MASSACHUSETTS GENERAL <br> LAWS CHAPTER 93A <br> and <br> OTHER CLAIMS |

Through this Complaint, Plaintiffs RAFFAELLA AND ORIANA DISTEFANO ("Plaintiff's"), by and through their undersigned attorneys, alleges against BANK OF AMERICA CORPORATION, EARLY WARNING SERVICES, LLC DBA ZELLEPAY.COM., (collectively, "Defendants"), as follows:

### INTRODUCTION

1. This action relates to an individual and potential massive fraud committed by Defendants, whereby Defendants fraudulently and illegally made, caused, and/or allowed unauthorized withdrawals of monies from individual plaintiffs and proposed class members' Bank of America bank accounts using Zelle as well as in-person withdrawals without proper identification.

2. This action further relates to a secondary fraud committed by Defendants whereby after Defendants fraudulently and illegally made, caused and/or allowed unauthorized withdrawals of monies from individual plaintiff and proposed class members Bank of America bank accounts using Zelle as well as in-person withdrawals without proper identification; <u>then</u> made an intentional effort to discredit plaintiff's by failing to return money to plaintiff and shift blame to

plaintiff by stating that withdrawals were properly authorized. This representation was knowingly false and represents a common scheme of unfair and deceptive business practices by Defendant's Bank of America's agents to evade the rightful reimbursement owed to the individual Plaintiff and the members of the proposed class, thereby depriving them of funds to which they are legally entitled.

## PARTIES AND JURISDICTION

3. At all times Plaintiff RAFFAELLA F. DISTEFANO (hereinafter R. DISTEFANO) lived in Lynnfield, MA. A town located in Essex County, Massachusetts.

4 At all times Plaintiff ORIANA DISTEFANO, (hereinafter O. DISTEFANO) lived in Lynnfield, MA. A town located in Essex County, Massachusetts.

5. Plaintiff is informed and believes and thereupon alleges that Defendant BANK OF AMERICA CORPORATION (hereinafter "B.O.A.") is a corporation formed under the laws of Delaware with its principal place of business in the State of North Carolina and transacts billions of dollars per year of business in Massachusetts, including in this County and other counties throughout Massachusetts.

6. Defendant EARLY WARNING SERVICES (hereinafter "Early Warning") is best known as the owner and operator of the Zelle Network® ("Zelle"), a financial services network which purportedly enables individuals to <u>securely</u> electronically transfer money from their BOA bank account to another registered user's bank account (within the United States) using a mobile device or the website of a participating banking institution.

7. Plaintiff is informed and believes and thereupon alleges that Defendant EARLY WARNING SERVICES, ("Early Warning") LLC DBA ZELLEPAY.COM ("Zelle") is a corporation handling billions of dollars per year of business transactions in The United States of America, including in Essex County and other counties throughout Massachusetts.

8. Bank of America (BOA), Early Warning Services (EWS), and Zelle (Zelle) are deeply interlinked in the operation and management of the Zelle payment platform, which facilitates peer-to-peer (P2P) transactions.

   a. Early Warning Services (EWS), a private financial services company, operates the underlying technology and infrastructure of Zelle, a real-time money transfer service. EWS was created as a joint venture by several major U.S. banks, including Defendant

Bank of America (as well as, but not limited to JP Morgan Chase, and Wells Fargo) and is responsible for ensuring the functionality and security of the Zelle network.

b.  As a founding member and major stakeholder of EWS, **Bank of America** has substantial control over the operations and policies governing the Zelle platform. BOA integrates Zelle into its own banking services, providing customers with access to the platform via their online and mobile banking apps.

c.  While Zelle itself is marketed as a fast, "**secure**," and reliable payment service, both EWS and Bank of America, as co-owners and operators of the platform, share the responsibility for maintaining the system's security and safeguarding consumers from fraud.

d.  Given that Bank of America is a significant shareholder in EWS, it exercises considerable influence over the Zelle network's operations, security protocols, and fraud prevention mechanisms.

e.  Bank of America, (BOA) through its ownership of EWS, has a dual role: it both integrates Zelle into its services for its customers and shares in the financial responsibility for Zelle's security.

f.  Early Warning Services, (EWS) as the entity that develops and maintains the Zelle network, is likewise responsible for ensuring the platform operates safely and securely.

9.  Despite their shared control and responsibility for Zelle, both Bank of America and EWS failed to implement adequate protections against fraud and failed to reimburse users in cases of fraudulent transactions, including the Plaintiff's.

a.  Because both Bank of America and Early Warning Services jointly oversee the Zelle platform and its security, they are jointly and severally liable for the Plaintiff's losses. As co-owners of the platform, both parties have a duty to ensure that Zelle operates in a secure and fraud-resistant manner. Their failure to address known vulnerabilities and the failure to reimburse the Plaintiff after fraudulent transactions occurred demonstrates their collective negligence.

b.  Under the doctrine of joint and several liability, the Plaintiff may pursue recovery from either or both parties for the full extent of the damages caused by their shared failure to protect consumers from fraud.

c   Further, Plaintiff is informed and believes and thereupon alleges that at all times mentioned, each of the Defendants was (and still is) the employee, agent, partner, joint venturer,

alter ego, and/or co-conspirator of the other such defendants. At all times mentioned, a unity of interest in ownership and other interests between each of such Defendants has existed such that any separateness ceased to exist between them. The exercise of complete dominance and control over the other entities and their properties, rights and interests, rendered such entities as mere shells and instrumentalities of each other.

   d.  Plaintiff is ignorant of the true names and capacities, whether individual, corporate, or associate of all potential Defendants. Upon discovering the true names and capacities of these defendants, Plaintiff will amend this Complaint to show the true names and capacities of these defendants.

10.  Defendant B.O.A is subject to Massachusetts jurisdiction by having a branch that is wholly owned by the parent corporation located in Lynnfield, Massachusetts.

11.  All Defendants are subject to Massachusetts Jurisdiction though Massachusetts Long-Arm Statute L. c. 223A, § 3, which permits a court to exercise personal jurisdiction over a person or company who directly or indirectly conducts business in Massachusetts if the alleged cause of action arises out of the business conducted in Massachusetts.

12.  This is a civil action seeking relief for violations of the <u>Electronic Funds Transfer Act</u> (EFTA), **15 U.S.C. § 1693,** and its implementing regulation, Regulation E, 12 C.F.R. § 1005, arising from Defendant's unauthorized electronic funds transfers from Plaintiff's account.. Additionally, Plaintiff brings state law claims arising from the same set of facts as Federal claims. This Court has jurisdiction over the EFTA claims pursuant to **28 U.S.C. § 1331 (federal question jurisdiction),** and over the **state law** claims under **28 U.S.C. § 1367 (supplemental jurisdiction).**

## CLASS ACTION ALLEGATIONS

13.  Plaintiff brings this case as a class action pursuant to *Massachusetts Code of Civil Procedure § 23* on behalf of a putative class (the "Class" or "Class Members") consisting of:

> <u>All Massachusetts residents who had unauthorized Zelle withdrawals from their Bank of America account at any time from four years prior to the filing of this Complaint (plus any tolling) through trial (the "Class Period").</u>

14.  Plaintiff reserves the right to amend the class definition or add any class or subclass prior to seeking class certification.

15. **Numerosity**. Although Plaintiff does not know the exact number of members in the Class, Plaintiffs are informed and believe and on that basis allege, that due to the nature of the commerce involved, the members of the Class are sufficiently numerous in number, most likely thousands of persons, that joinder of all class members is impracticable.

16. **Typicality**. Plaintiff's claims are typical of the Class claims in that Plaintiff and the Class members have both a Bank of America bank account and Zelle and have had unauthorized transactions from their bank accounts due to Defendants' deceptive, unlawful, fraudulent, and unfair conduct.

17. **Existence of common questions of fact and/or law.** Numerous questions of law and fact are common to the Class. Common questions, including, but not limited to, the following, will predominate this litigation:

    a. Whether Defendants have caused unauthorized transactions from consumers' Bank of America bank accounts;

    b. Whether Defendants have made misrepresentations and/or omissions concerning their products and/or services, including those relating to safety and privacy;

    c. Whether Defendants have made misrepresentations and/or omissions concerning the value, sponsorship, approval, characteristics, uses, benefits, and/or qualities of their services and/or products;

    d. Whether Defendants have made misrepresentations and/or omissions concerning the standard, quality, or grade of their products and/or services;

    e. Whether Defendants have made representations that a transaction confers or involves rights, remedies, or obligations that it does not have or involve;

    f. Whether Defendants advertise and/or market their products and/or services and with intent not to sell it as advertised;

    g. Whether Defendants have made representations that the consumer will receive a rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction;

    h. Whether Defendants have made misrepresentations the affiliation, connection, or association with, or certification by, another;

i. Whether Defendants have violated the law by causing or allowing transactions from class members' bank accounts without authorization;

j. Whether Defendants were unjustly enriched;

k. The nature and extent of damages and other remedies to which the conduct of Defendants entitled the class members;

l. Whether Defendants' practices, policies, representations, concealments, and non-disclosures violate M.G.L. c 93A;

m. Whether the Class is entitled to injunctive relief prohibiting the challenged practice and enjoining such practices in the future;

n. Whether the Class is entitled to punitive damages; and

o. Whether Plaintiff and the Class are entitled to attorneys' fees and expenses.

18. **Adequacy**. Plaintiff will fairly and adequately represent the interests of the Class in that Plaintiff is typical of absent class members and seeks to vigorously litigate the claims of the Class. Furthermore, Plaintiff has retained competent counsel experienced in class action litigation. Plaintiff's counsel will fairly and adequately protect the interests of the Class.

19. This class action is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy. The relief sought per individual class member is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated to prosecute the Class's claims. Furthermore, it would be virtually impossible for Class members to seek redress on an individual basis. Even if Class members themselves could afford such individual litigation, the court system could not.

20. Individual litigation of the legal and factual issues raised by the conduct of Defendants would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale and comprehensive supervision by a single court. Given the similar nature of the Class members' claims and the law applicable thereto, the Court and the parties will easily be able to manage a class action.

21. Prosecution of separate actions by individual class members would create the risk of inconsistent or varying adjudications concerning Defendants' conduct, establishing incompatible standards of conduct for Defendants and absent class members.

22. Injunctive relief is appropriate as to the Class as a whole because Defendants have acted or refused to act on grounds generally applicable to the Class.

## BACKGROUND OF CASE.

23  Defendant "Bank of America" is the second largest bank in America with a Market Capitalization in excess of Three Hundred and Fifty Billion (350,000,000,000) dollars. Bank of America, allows customers to open both checking and savings accounts. Approximately Sixty Nine Million (69,000,000) customers entrust Bank of America to hold and secure their monies and to release their monies only upon the customer's proper and express authorization to do so.

24. Defendant EARLY WARNING SERVICES,LLC DBA ZELLEPAY.COM (hereinafter "Zelle") is a mobile application (an "app") that allows customers to transfer monies from their bank account to the bank account of another person without having to wire funds. On its website, www.zellepay.com, Zelle claims that it offers a way to **"Safely send money to friends and family, no matter where they bank!"** Zelle further claims that **"Zelle® is a great way to send money to friends and family, even if they bank somewhere different than you do."**

25. With Zelle, customers can make debit transactions and transfer monies from their bank account to another person's bank account. Zelle connects with many of the largest banks, including Co-Defendant Bank of America.

26. Customers who have both a Bank of America bank account and Zelle can easily transfer monies from their Bank of America bank account to someone else's bank account. Once a transaction has been processed, the money is immediately withdrawn from the sender's bank account and immediately placed in the recipient's bank account.

27. Plaintiff was first made aware on February 14th, 2022 that Defendant's were causing, allowed to be caused and / or allowed unauthorized withdrawals from customers Bank of America bank accounts. This was done in Person as well as online using the aforementioned online p2p application "Zelle".

28. Withdrawals show as a Zelle transaction but were never authorized by the customer. Plaintiff alleges that the unauthorized withdrawals in her account range in the thousands of dollars.

29  Plaintiff is informed and believes that this occurred to hundreds, if not thousands, people who had both a Bank of America account and Zelle, ranging in millions of dollars.

30. Plaintiff is informed and believes that the unauthorized "Zelle" withdrawals were caused by a lack of security in Defendants' internal system.

31. Plaintiff was made aware in the course of attempting to recoup her monies that Defendant intentionally misrepresents and omits a key fact about their "Zelle" service that is unknown to account holders, but was well known to Defendant: that there is virtually no recourse for consumers to recoup losses due to fraud.

32. Indeed, unlike virtually every other payment method commonly used by American consumers—debit cards, credit cards, and checks—there is no protection for account holders who are victims of fraud, and virtually no recourse for account holders attempting to recoup losses due to fraud.

33. At no time in its marketing or during the sign-up process does Defendant reasonably warn potential users of the true security risk of Zelle, that fraud may and does occur, and that fraudulent losses will never be reimbursed by Defendant. Zelle services can cause unsuspecting consumers like Plaintiff to incur massive losses on their linked bank accounts.

34. Defendant misrepresents and omits facts about the true nature, benefits, and risks of the Zelle service, which means that users are at extreme and undisclosed risk of fraud when using Zelle.

35. Had Plaintiff been adequately informed of these risks, she would not have signed up for or used Zelle.

36. Defendant's misrepresentations and omissions are especially pernicious because as Defendant is now aware when as a matter of secret bank policy, fraudulently-induced Zelle transfers will almost never be reimbursed to account holders.

## PLAINTIFF STATEMENT OF FACTS

37. On or about Feb 14, 2022, PLAINTIFF, R.DISTEFANO, checked her BANK OF AMERICA online banking statement and noticed several large unauthorized withdrawals from the aforementioned "Zelle" of anywhere from Two Thousand (2,000) to Nine Thousand (9,000) dollars, totalling cumulatively an approximate Twenty Five Thousand (25,000) dollars.

38. Rafaella immediately called her local bank in Lynnfield, MA but it was closed. She then called her daughter, Co-Plaintiff O. DISTEFANO, to inform her of these withdrawals.

39. The next day, February 15th, 2022, Plaintiff R.Distefano went to their local Bank Of America branch in Lynnfield, MA and spoke to the manager, a "Mike Luciari."

40. Luciari printed out their transaction history and it was discovered that some of those large withdrawals had been made **in-person** at a teller station out of state; as well as the withdrawals that were made electronically with Zelle. At that time Plaintiff O.Distefano states she was told that the total amount fraudulently withdrawn between Zelle and in-person transactions was approximately Forty Eight Thousand Dollars.(48,000)

41. At this point R. Distefano closed her and O.Distefano's accounts, which were linked together.

42. R. Distefano was then sent to meet with a "Patrizia DeCologero", an assistant Manager.

43. Ms. DeCologero stated that she had frozen account and stopped anyone from any further activity on the account.

44. Ms. DeCologero stated explicitly that in addition to the Zelle withdrawals that did not have proper authentication, that an unknown person went into a BOA branch in Tulsa, Oklahoma with no identification, and stated that their "Zelle" app was not working, and still was allowed to withdraw money from the Distefano's account several times.

45. Neither Plaintiff's Oriana Distefano or Rafealla Distefano have ever been to Tulsa, OK in their lives.

46. Ms. DeCologero stated she would report all of this, follow up and that their money was insured and they would be repaid.

47. Later that same day, after the account was allegedly frozen by DeCologero (2/15/2022) a person again went into a Tulsa, Oklahoma branch claiming they were one of the Distefano's and that their Apple Pay debit card was not working, in an attempt to have the Distefano's debit card put on their own Apple Pay wallet.

48. The identity of the person who withdrew this money from the Tulsa, OK BOA branch is currently unknown to Plaintiff.

49. For approximately ten (10) months, neither R. Distefano or O. Distefanao's account was fully refunded. The accounts stayed frozen and neither Plaintiff could pay bills from these, their primary accounts.

50. During this timeframe on May 6th, 2022 Oriana and Rafealla were sent a conclusory letter from Defendant that stated Defendant BOA had investigated the transactions and all of them were correctly authorized.

51. BOA representatives stated that they had no liability in the situation as proper procedures were followed (during the in-person withdrawal form Bank Teller in the branch location in Tulsa, Oklahoma) and Zelle transfers were also properly authenticated when made.

52. This is unequivocally false. Subject that withdrew the money did not have proper identification as neither Oriana or Rafaella withdrew the money.

53. BOA at this time had knowledge that Zelle was vulnerable to fraudulent withdrawals yet did not inform Plaintiff of this fact.

54. The statements about Zelle and BOA being properly authenticated runs afoul of what as explicitly stated to both parties when the Distefano's made their inquiries at the Lynnfield, MA branch; when they were explicitly told that the person in the Tulsa, OK branch did not have any ID when they withdrew the money.

55. Further when Plaintiff's followed up and spoke to representatives from Bank of America as to how withdrawals were properly executed, the Distefano's were tacitly accused of being the party that did in fact withdraw the money from the branch in Tulsa,

56. As stated prior, Monies were withheld for 10 months by Bank of America until Plaintiff's Attorney, ROBERT LEGROW, sent a G.L.c 93A Demand Letter in December of 2022 stating that Complaint would be filed in Civil Court.

57. Almost immediately after receiving LeGrow's Demand, Bank of America reopened their dormant-since-May investigation and reversed their stance, refunding all of Plaintiff's lost monies.

58. BOA withheld the monies for months with no justification and with the knowledge that Zelle was proven to be vulnerable in exactly these same type of fraudulent transactions.

59. As a final breach of duty the Distefanos were approached by outside parties in public, who were friends and acquaintances previously unaware of the breach.

60. These acquaintances, who the Distefano's had never disclosed this current issue with Bank of America, stated that BOA employees at the Lynnfield BOA Branch had informed them of the

Distefano's plight and had been giving out their personal information and the details of this particular event.

### A. Defendant is Legally Required to Cover Unauthorized Fraudulent Transactions

61. The Electronic Fund Transfer Act ("EFTA") and Regulation E apply to an electronic fund transfer that authorizes a financial institution to debit or credit a consumer's account. 12 CFR 1005.3(a).

62. The term "electronic fund transfer" or "EFT" means any transfer of funds that is initiated through an electronic terminal, telephone, computer, or magnetic tape for the purpose of ordering, instructing, or authorizing a financial institution to debit or credit a consumer's account. 12 CFR 1005.3(b)(1).

63. Accordingly, Regulation E applies to any person-to-person (P2P) or mobile payment transactions that meet the definition of EFT, including debit card, ACH, prepaid account, and other electronic transfers to or from a consumer account. 12 CFR 1005.3(b)(1)(v); Comment 3(b)(1)-1.ii.

64. According to the Consumer Financial Protection Bureau ("CFPB"), "Person-toperson" or "P2P" payments allow a consumer to send money to another person without needing to write a check, swipe a physical card, or exchange cash. Depending on the payment provider, a P2P payment can be initiated from a consumer's online bank account portal, prepaid account portal, or mobile application. Any P2P payment that meets the definition of EFT is covered by EFTA and Regulation E.

65. Any P2P payment provider can be a financial institution under Regulation E. Thus, if a P2P payment provider directly or indirectly holds an account belonging to a consumer, they are considered a financial institution under Regulation E. 12 CFR 1005.2(i)

66. If a consumer notifies a financial institution within two business days after learning of a loss due to an unauthorized transfer, the consumer's liability shall not exceed the lesser of $50 or the amount of unauthorized transfers that occur before notice to the financial institution. 12 C.F.R. § 1005.6(b)(1).

67. Even if the consumer fails to notify the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the lesser of $500 or the sum of: (i) $50 or the amount of unauthorized transfers that occur within the two business days, whichever is less; and (ii) [t]he amount of unauthorized transfers that occur

after the close of two business days and before notice to the institution, provided the institution establishes that these transfers would not have occurred had the consumer notified the institution within that two-day period. 12 C.F.R. § 1005.6(b)(2).

68.     If the consumer's delay in notifying the financial institution was due to extenuating circumstances, the institution shall extend the times specified above to a reasonable period. 12 C.F.R. § 1005.6(b)(4).

69.     The CFPB has made it clear that a transaction that is fraudulently induced by a third party is an unauthorized electronic funds transfer subject to the limitations of liability in 12 C.F.R. § 1005.6.5 52. "Negligence by the consumer cannot be used as the basis for imposing greater liability than is permissible under Regulation E."

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE ELECTRONIC FUND TRANSFER ACT (EFTA) AND REGULATION E

70.     Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 69 as though fully set forth herein.

71.     Applicability of EFTA and Regulation E:
The Electronic Fund Transfer Act (EFTA), 15 U.S.C. § 1693 et seq., and its implementing regulation, Regulation E, 12 C.F.R. § 1005, establish protections for consumers who use electronic fund transfer services. These laws require financial institutions to limit consumer liability for unauthorized transactions and provide a mechanism for resolving errors in a timely manner.

72.     Unauthorized Transactions:
The EFTA defines an "unauthorized electronic fund transfer" as one "initiated by a person other than the consumer without actual authority to initiate such transfer." 15 U.S.C. § 1693a(12). Plaintiffs' accounts were accessed without their consent, and the transactions were initiated by an unknown individual. Defendants' failure to reimburse Plaintiffs promptly violates the EFTA's requirement that consumers be protected from liability for unauthorized transactions.

73.     Timely Resolution Requirement:
Regulation E requires financial institutions to investigate and resolve reported errors within specific timeframes. 12 C.F.R. § 1005.11. 12 C.F.R. § (c) (1) and (2) outline appropriate timeline for Financial Institutions to investigate and reimburse consumer. Defendants' delay in

13

wholly reimbursing Plaintiffs for nearly 11 months constitutes a clear violation of this requirement.

74. <u>Consumer Liability Limits:</u>

Under Regulation E, if a consumer notifies a financial institution within two business days after learning of a loss due to an unauthorized transfer, the consumer's liability shall not exceed the lesser of $50 or the amount of unauthorized transfers that occur before notice to the financial institution. 12 C.F.R. § 1005.6(b)(1). Plaintiffs notified Defendants promptly upon discovering the unauthorized transactions, yet Defendants failed to comply with these liability limits.

75. <u>Failure to Comply with EFTA and Regulation E:</u>

Defendants' conduct, including their failure to promptly investigate and resolve the unauthorized transactions, their failure to reimburse Plaintiffs within the required timeframes, and their failure to limit Plaintiffs' liability as required by law, constitutes a violation of the EFTA and Regulation E.

76. <u>Damages:</u>

As a direct and proximate result of Defendants' violations of the EFTA and Regulation E, Plaintiffs have suffered financial losses, emotional distress, and other damages. Plaintiffs are entitled to recover actual damages, statutory damages, and all other relief as provided under the EFTA and Regulation E.

77. <u>Injunctive Relief:</u>

Plaintiffs seek injunctive relief to prevent Defendants from continuing to engage in practices that violate the EFTA and Regulation E, including but not limited to failing to promptly investigate and resolve unauthorized transactions and failing to limit consumer liability for unauthorized transfers.

78. <u>Attorneys' Fees and Costs:</u>

Pursuant to 15 U.S.C. § 1693m, Plaintiffs are entitled to recover reasonable attorneys' fees and costs incurred in bringing this action.

## COUNT II – BREACH OF CONTRACT

79. Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 78 as though fully set forth herein.

80. Plaintiff, and each member of the proposed Class, formed a contract with Defendants BOA and EWS at the time they deposited monies into and transferred funds through Defendants' services. . The terms of that contract include the promises and affirmations of fact made by

Defendants through their marketing materials and statements which constitute express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiff and the members of the proposed Class on the one hand, and Defendants on the other.

81. In exchange for Defendants' assurance to Plaintiff and Class Members that they would have access to their financial accounts which would be maintained securely and accurately Plaintiff and Class Members funded their accounts and utilized banking services which generated revenue for Defendants.

82. Plaintiff and Class members gave consideration that was fair and reasonable, and have performed all conditions, covenants, and promises required to be performed.

83. Defendants breached the terms of this contract, including the express warranties, with Plaintiff and the proposed Class by not providing a product and service which provided the promised benefits as described above.

84. As a result of Defendants' breach of its contract and warranties, Plaintiff and the proposed Class have been damaged in an amount to be proven at trial.

## COUNT III
## VIOLATION OF MASSACHUSETTS GENERAL LAW CHAPTER 93A.
(against all Defendants)

85. Plaintiff incorporates by reference 1-84 as if fully set forth herein.

86. Plaintiff and members of the Class are individuals who have purchased services from Defendants for personal, family, or household purposes.

87. Defendants and Plaintiffs are "persons" as defined by M.G.L c 93A § 1 (a),

88. Defendants have violated and continue to violate M.G.L.c 93A §2 by engaging in unfair, fraudulent, deceptive, and unconscionable conduct, including, but not limited to, the following:

    a. Making misrepresentations and/or omissions concerning their products and/or services, including with respect to safety and privacy.
    b. Making misrepresentations and/or omissions concerning the value, sponsorship, approval, characteristics, uses, benefits, and/or qualities of their services and/or products;
    c. Making misrepresentations and/or omissions concerning the standard, quality, or grade of their products and/or services;

d. Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve;

e. Advertising and marketing their products and/or services and with intent not to sell it as advertised;

f. Representing that the consumer will receive a rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction;

g. Misrepresenting the affiliation, connection, or association with, or certification by, another.

89. A reasonable consumer would attach importance to Defendants' representations and omissions.

90. Defendants intended to commit the aforementioned unlawful conduct. Defendants are aware of their policies and practices, their representations and omissions made to Plaintiff and class members, their contractual obligations, and the harm befallen upon Plaintiff and the Class for their conduct.

91. Plaintiff sent G.L.c 93 A Demand Letter to Defendants, who knew of Zelle's potential for exposing its clients to fraud.

92. As a result of Defendants' actions and conduct, as set forth herein, Plaintiff and the Class have suffered injury-in-fact and have lost money.

93. Pursuant to M.G.L. c 93A of the Massachusetts General Laws, Plaintiff and the Class are entitled temporary, preliminary, permanent and punitive relief.

94. Plaintiff engaged counsel to prosecute this action and is entitled to recover costs and reasonable attorneys' fees according to proof at trial. Further Plaintiff's Counsel:

   A. Prepared M.G.L. c 93A Demand Letter and sent Copy to Both Co-Defendant Counsel.
   B. Co- Defendant Counsel's Offer of Settlement was not reasonable as it did not even reach 20% of her actual Damages, let alone account for any double or treble damages under statute.

95. Defendants' conduct, as complained herein, is likely to deceive a reasonable consumer, and members of the public are likely to be deceived by Defendants' practices and policies.

96. Further Defendants' conduct, as complained herein, constitutes unlawful conduct, because it constitutes wire fraud and bank fraud.

97. Defendants' conduct, as complained herein, is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers.

98. Plaintiff requests that this Court enter such orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair practices and/or, to the extent permitted by law, to require the disgorgement by Defendants of all revenues, and benefits that may have been obtained by Defendants as a result of such fraudulent, unlawful, and/or unfair business acts or practices, and for such other relief as set forth below.

99. Plaintiff and the Class seek an order requiring Defendants to make full restitution of all monies wrongfully obtained from Plaintiff and the Class.

100. Plaintiff engaged counsel to prosecute this action and is entitled to recover costs and reasonable attorneys' fees according to proof at trial.

## COUNT IV.
## VIOLATION OF MASSACHUSETTS GENERAL LAW CHAPTER 93A.
## (against DEFENDANT BANK OF AMERICA)

101. Plaintiff incorporates by reference paragraphs 1-100.

102. Plaintiff first informed Defendants agents of the fraudulent transfers and withdrawals on February 15th, 2022.

103. From 2/15/2022 when Plaintiff attempted to recover monies lost to fraudulent transactions. Defendants engaged in deceptive conduct, including deceptive, misleading, and/or false omissions and representations relating to their products and/or services as well as baselessly withholding Plaintiff's monies and failing to reimburse them.

104 Defendants were aware, or by the exercise of reasonable case should have been aware, that their omissions and representations were deceptive, misleading, and/or false.

105. Defendants were aware at this time that the Mobile Online Banking App Zelle was susceptible to online breaches and fraudulent person to person withdrawal.

106. As a result of Defendants' actions and conduct, as set forth herein, Plaintiffs have suffered injury-in-fact and have lost money or property as set forth herein.

107. Plaintiff engaged counsel to recover monies to litigate this action and is entitled to recover costs and reasonable attorneys' fees according to proof at trial.

108. When Plaintiffs engaged counsel to recover monies to litigate this action, Plaintiffs counsel sent G.L.c. 93A Demand Letter to Defendant.

109. In response to M.G.L. c 93A Defendant failed to make reasonable settlement offer and again, engaged in deceptive, misleading, and/or false representations and omissions, when they stated that they were not at fault.

110. Plaintiff requests that this Court enter such orders or judgments as may be allowed by statute due to Plaintiff's unfair practices and non-responsiveness to G.L.c 93A Demand Letter.

## COUNT V
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

111. Plaintiff reincorporates paragraphs 1-110 above.

112. Defendants reckless conduct constituted numerous breaches of duty owed to Plaintiff on more than one occasion and such breaches were the actual and proximate cause of harm.eeee

113. Plaintiffs have been deprived of tens of thousands of dollars at a time where people in this country have been hit very hard economically.

114. This has caused them massive stress and anguish.

115. Further, Bank Of America has sought to blame Plaintiff for their plight. What the Distefano's had to go through was no fault of their own and attributed only to the negligence of Bank of America. This issue will have untold effects in the future.

## COUNT VI
## NEGLIGENCE
## (against all Defendants)

116. Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 115 as though fully set forth herein.

117. Defendants BOA and EWS owed duties to Plaintiff and the proposed Class, Zelle account holders, to use reasonable care to protect and secure customer funds and provide access to those monies.

118. Defendants BOA and EWS had full knowledge of the types of harm that Plaintiff and Class Members could and would suffer as a result of Zelle's susceptibility to fraudulent transactions.

119. Defendants BOA had full knowledge of the types of harm that Plaintiff and Class Members could and would suffer if funds were fraudulently transferred.

120. Defendants BOA had full knowledge of the types of harm that Plaintiff and Class Members could and would suffer if they were denied access to the monies in their account.

121. Defendants BOA breached their duties to Plaintiff and Class Members by failing to prevent fraudulent transactions.

122. Defendants BOA breached their duties to Plaintiff and Class Members by failing to adequately respond to Zelle's vulnerability to fraudulent transactions and maintain the integrity of customer accounts.

123. This caused not only monies lost but stress and anxiety for Plaintiff and Class Members.

124. Defendants BOA failed to use reasonable care in communicating to Plaintiffs, information about vulnerability of Zelle to fraud and about lack of security of account funds and online transactions; instead marketing Zelle as "secure" in their advertisements.

125. Plaintiff and the proposed Class justifiably relied upon the information supplied and representations made by Defendants, and, as a result, engaged in business with Defendants and suffered damages and lost money.

126. But for Defendants' negligence Plaintiff and the proposed Class would not have suffered the damages alleged herein.

127. As a direct and proximate result of Defendants' negligence, Plaintiff and the proposed Class were damaged in an amount to be proven at trial.

## PRAYER

WHEREFORE, Plaintiff on behalf of herself and all others similarly situated, pray for

judgment and orders against Defendants as follows:

1. For an order certifying the Class;
2. For an order appointing Robert J. LeGrow, Esq. as Class Counsel and Plaintiff as Class Representative;``
3. For an award of general damages according to proof;
4. For an award of treble damages according to proof;
5. For an award of special damages according to proof;
6. For an award of punitive damages in an amount sufficient to deter and make an example of Defendants;
7. For an award of restitution in an amount according to proof;
8. For disgorgement in an amount according to proof;
9. For a temporary restraining order, a preliminary injunction, and a permanent Injunction enjoining Defendants, and their agents, servants, employees and all persons acting under or in concert with them, from engaging in the wrongful practices set forth herein;
10. For reasonable attorneys' fees and costs incurred herein;
11. For an award of pre-judgment and post-judgment interest on all amounts awarded; and
12. For all general, special, and equitable relief to which the Plaintiffs and the members of the Class(es) are entitled by law.
13. For an award of punitive damages pursuant M.G.L. Chatper 93A.
14. For an award of Attorney's fees pursuant to M.G.L. Chapter 93A
15. Grant any other relief that the Court deems just and proper, including but not limited to injunctive relief to prevent further harm or violations.
16. Grant a trial by jury on all issues so triable.

DATED: February 4th, 2025
By:

_____
ROBERT J. LEGROW

Attorney for Plaintiff and the Putative Class
8 Drew St
Newburyport, MA 01950
rjlegrow@gmail.com