United States District Court
District of Massachusetts

_____

Oriana F Distefano, et al.,     )
                      )
       Plaintiff,         )
                      )
       v.                   )     Civil Action No.
                      )     25-10272-NMG
Bank Of America, N.A., et al.,  )
                      )
       Defendant.         )
                      )
_____

**MEMORANDUM & ORDER**

GORTON, J.

Pending before the Court are the motions to dismiss of defendants Bank of America, N.A. ("BANA") and Early Warning Systems, d/b/a ZellePay.com ("EWS") (Docket Nos. 12 and 16, respectively). Because the complaint fails to state a claim upon which relief can be granted, both motions will be allowed.

I.   **Background**

     **A. Facts**

In February, 2022, plaintiffs Raffaella and Oriana Distefano (collectively, "plaintiffs") became aware of several unauthorized withdrawals from their BANA account through Zelle, a money-transfer mobile application operated by EWS. The withdrawals ranged from between $2,000 and $9,000. Zelle authenticates money transfers online, rather than by wire, and

connects directly to bank accounts.  The total withdrawals in this case amounted to approximately $48,000.

Raffaella went to a BANA branch the next day and spoke to a manager, Mike Luciari, to report the fraudulent withdrawals. Luciari directed plaintiff to Patrizia DeCologero, an assistant manager, who stopped payments to and from the affected accounts. DeCologero also told Raffaella that the withdrawals had been without proper authentication and that an individual had visited a BANA branch in Tulsa, Oklahoma, to have Raffaella's debit card added to his or her own Apple Pay e-wallet.

In May, 2022, plaintiffs received a letter from BANA declaring that, contrary to what they were told in February, proper procedures had been followed during the Tulsa branch episode and that the Zelle transfers had been properly authenticated.  When plaintiffs spoke to BANA representatives about the May letter, defendant's representatives implied that plaintiffs had made the Tulsa withdrawals themselves. Plaintiffs respond that neither of them has ever been in Tulsa, Oklahoma.  For the following ten months, plaintiffs' accounts remained frozen, and they were unable to pay bills from those accounts.

In December, 2022, plaintiffs sent a "Chapter 93A letter" to BANA giving defendants written notice of their intent to file a civil action against the bank.  Although not filed with the

Court, the letter apparently requested repayment of the lost funds as well as $300,000 in damages.  In response, BANA refunded all the improperly withdrawn money but made no offer of settlement with respect to the $300,000 damages claim.

Plaintiffs filed their initial complaint in February, 2025, and an amended complaint in May, 2025.  BANA and EWS promptly filed their motions to dismiss which were timely opposed by plaintiffs.

## II. <u>Motion to Dismiss</u>

### A. Legal Standard

Both defendants have moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(6).  To survive a motion to dismiss pursuant to Rule 12(b)(6), the plaintiff must state a claim for relief that is actionable as a matter of law and plausible on its face. <u>Ashcroft</u> v. <u>Iqbal</u>, 556 U.S. 662, 678 (2009).  A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable. <u>Ocasio-Hernandez</u> v. <u>Fortuno-Burset</u>, 640 F.3d 1, 12 (1st Cir. 2011).

When rendering such a determination, a court may consider certain categories of documents extrinsic to the complaint without converting a motion to dismiss into a motion for summary judgment. <u>Freeman</u> v. <u>Town of Hudson</u>, 714 F.3d 29, 36 (1st Cir. 2013).  For instance, a court may consider documents central to

-3-

a plaintiff's claim or documents that were sufficiently referred to in the complaint. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

When alleging fraud, parties must satisfy the heightened pleading standard under Fed.R.Civ.P. 9(b). Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004). Rule 9(b) requires a plaintiff to state the circumstances constituting fraud with particularity and to specify the who, what, where and when of the alleged misrepresentation. Id.

### B. Application

#### i. Count I – Electronic Fund Transfer Act (EFTA)

Both defendants argue that Count I should be dismissed under the statute of limitations because EFTA claims must be brought within one year of the occurrence of the violation. 15 U.S.C. §1693m(g). Plaintiffs respond that judicial estoppel and equitable tolling prevent defendants from raising such a defense.

The Court concludes that plaintiffs are not entitled to these equitable remedies. Regardless of the alleged fraud, any potential EFTA violation was made known to plaintiffs no later than December, 2022, when BANA deposited the lost funds back into plaintiffs' accounts. Plaintiffs filed their complaint in

-4-

February, 2024, 14 months later.  The motions to dismiss will therefore be allowed with respect to Count I.

### ii. Count II - Breach of Contract

To prevail on a breach of contract claim under Massachusetts law, plaintiffs must demonstrate that 1) a valid contract existed, 2) defendants breached the terms of that contract and 3) plaintiffs sustained damages as a result. Brooks v. AIG SunAmerica Life Assurance Co., 480 F.3d 579, 586 (1st Cir. 2007).  Plaintiffs allege that they entered into binding contracts with both BANA and EWS upon depositing money into the bank account and transferring funds from it by use of defendants' services.  They claim that defendants' marketing materials, and statements made therein, constitute warranties that became the basis of their bargain and terms of the resulting agreement.  Plaintiffs further aver that those terms were breached when defendants failed to provide services in accordance with such warranties.  In response, defendants rejoin that no such contract ever existed, and, even if it did, plaintiffs have failed to identify any provision thereof that was breached.

The Court concludes that while the parties may well have entered into an agreement with respect to plaintiffs' use of defendants' services, the complaint fails to allege facts sufficient to establish the terms of such agreement.  A claim

-5-

for breach of contract must allege the specific promise which the defendant failed to keep. Falk v. Wells Fargo Bank, N.A., 600 F. Supp. 3d 115, 119 (D. Mass. 2022). That defendants held out their products to be safe does not establish a contractual obligation, and, even if it did, the facts as alleged do not constitute a violation of a written contract. The motions to dismiss will therefore be allowed with respect to Count II.

### iii. Counts III and IV — Violations of M.G.L. c. 93A

Plaintiffs claim that defendants also violated the Massachusetts Consumer Protection Act, M.G.L. c. 93A. While a Chapter 93A claim does not necessarily trigger the heightened Rule 9(b) standard, Liu v. Amerco, 677 F.3d 489, 497 (1st Cir. 2012), it does when it focuses on a claim of fraud, see, e.g., Valley Children's Hosp. v. Athenahealth, Inc., 2023 WL 6065800, at *4 (D. Mass. Sept. 18, 2023). A claim that relies on allegations of intentional or malicious false statements is a claim of fraud. Timmins Software Corp. v. EMC Corp., 502 F. Supp. 3d 595, 605 (D. Mass. 2020). By accusing defendants of "fraudulent" and "deceptive" conduct in Count III, and of making "deceptive" and "false" representations in Count IV, plaintiffs have alleged fraud and have therefore triggered the heightened pleading standard under Rule 9(b).

To succeed on a Chapter 93A claim premised on deception, plaintiffs must allege 1) a deceptive act or practice on the

part of defendants, 2) injury or loss and 3) a causal connection
between the two. Tomasella v. Nestle USA, Inc., 962 F.3d 60, 71
(1st Cir. 2020).  The injury may be economic or non-economic,
but it must be distinct to plaintiffs and arise directly from
the deceptive act itself.  Nightingale v. National Grid, 107
F.4th 1 (1st Cir. 2024).

### 1. Count III - Claims against BANA and EWS

Plaintiffs allege that BANA and EWS violated Chapter 93A by
falsely claiming that sending money via Zelle was safe.  They
cite to marketing materials on www.zellepay.com in which EWS
offers Zelle as a way to

> [s]afely send money to friends and family, no
> matter where they bank [and] Zelle is a great
> way to send money to friends and family, even
> if they bank somewhere different than you do.

While plaintiffs do not allege that BANA itself made any
misrepresentations, they contend that BANA failed to inform
consumers that Zelle was unsafe or that fraudulent losses would
not be recovered.

Such statements and omissions, combined with the facts of
the case, are insufficient to support a violation of Chapter
93A.  First, plaintiffs have failed to meet the heightened
pleading standard of Rule 9(b).  They do not plead that any
individual representatives of the defendants knew Zelle to be
unsafe despite the marketing.  Moreover, such marketing

statements offer a subjective view of the service rather than a description of a specific property. It is a classic example of puffery that is non-actionable under Chapter 93A. See Mulder v. Kohl's Dep't Stores, Inc., 865 F.3d 17, 22 n.5 (1st Cir. 2017). The motions to dismiss will therefore be allowed with respect to Count III.

### 2. Count IV - Claim against BANA

Plaintiffs allege that BANA further violated Chapter 93A with respect to its communications to plaintiffs between February and December, 2022. During that time plaintiffs contend that defendant BANA told them they were not entitled to a refund because the money was properly withdrawn, despite knowing that to be false.

This claim is unavailing as well. As explained above, plaintiffs have failed to allege that BANA knew or believed plaintiffs were entitled to a refund despite asserting otherwise. That omission precludes a claim under the heightened pleading standard of Rule 9(b). Furthermore, it is clear from the record that, upon receiving a Chapter 93A notice letter, BANA agreed to refund the disputed charges. To the extent that plaintiffs incurred further damages as a result of ten months without access to their money, they cannot claim relief under a theory of misrepresentation.

Plaintiffs' reliance on Eggiman v. Bank of Am., N.A., No.
1:22-CV-10298-ADB, 2023 WL 2647071 (D. Mass. Mar. 27, 2023), is
misplaced.  Eggiman dealt with whether the defendant bank could
be held liable under Chapter 93A for failing to reimburse
fraudulently withdrawn funds despite having offered the
plaintiff a zero-liability guarantee.  The court found that it
could, because the failure to refund the money was a violation
of a contractual covenant between the parties and therefore an
unfair practice under Chapter 93A.  Conversely, plaintiffs in
this case have pled no such agreement and have alleged only that
the stated misrepresentation led to their injury.  Such claims
of fraud are distinct from the contract claims in Eggiman and
subject plaintiffs to a higher pleading standard which they have
not met.  The motions to dismiss will therefore be allowed with
respect to Count IV.

### iv.  Counts V and VI – Negligent Infliction of Emotional Distress and Negligence

Plaintiffs allege that defendants' conduct amounted to the
negligent infliction of emotional distress and negligence.  To
succeed on a claim of negligence in Massachusetts, plaintiffs
must show that defendants owed them a duty of care, breached
that duty and that the breach resulted in damages.  Leavitt v.
Brockton Hosp., Inc., 454 Mass. 37, 39 (2009).  The economic
loss doctrine holds that, in the absence of personal injury or

property damage, economic damages are not recoverable in claims based upon negligence. Afridi v. Residential Credit Sols., Inc., 189 F. Supp. 3d 193, 199 (D. Mass. 2016). To succeed on a claim of negligent infliction of emotional distress, a plaintiff must prove 1) negligence, 2) emotional distress, 3) causation, 4) physical harm manifested by objective symptoms and (5) that a reasonable person would have suffered emotional distress under similar circumstances. Payton v. Abbott Labs, 386 Mass. 540, 557 (1982).

Here, plaintiffs allege only that they endured ten months without access to their money before BANA returned the funds to their accounts. Any damages associated with such delay are economic, and allegations of stress and anxiety arising therefrom are not recoverable unless they are related to personal injury.[1] Id. Without physical injury, both theories of negligence fail and the motions to dismiss will therefore be allowed with respect to Counts V and VI.

---

[1] Despite plaintiffs' explicit proffer that paragraph 123 of the complaint pleads hypertension and insomnia, the complaint contains no such reference.

## ORDER

For the forgoing reasons, the Motions to Dismiss of defendants (Docket Nos. 12 and 16) are **ALLOWED** and the case is **DISMISSED**.


**So ordered.**


_____
Nathaniel M. Gorton
Senior United States District Judge

Dated: February 27, 2026